1   Jonathan Matthew Baum (SBN: 303469)          Christopher J. Morvillo
    **Steptoe & Johnson LLP**                     Celeste L.M. Koeleveld
2   One Market Street                             Daniel S. Silver
    Steuart Tower, Suite 1070                     (Admitted Pro Hac Vice)
3   San Francisco, CA  94105                      **Clifford Chance US LLP**
4   Telephone: (510) 735-4558                     31 West 52nd Street
    jbaum@steptoe.com                             New York, NY 10019
5                                                 Telephone: (212) 878-3437
6   Reid H. Weingarten                            christopher.morvillo@cliffordchance.com
    Brian M. Heberlig
7   Michelle L. Levin
    Nicholas P. Silverman                         *Attorneys for Defendant*
8   Dwight J. Draughton                           *Michael Richard Lynch*
    Drew C. Harris
9   **Steptoe & Johnson LLP**
10  1114 Avenue of the Americas
    New York, NY 10036
11  Telephone: (212) 506-3900

12

13                  **UNITED STATES DISTRICT COURT**

14                 **NORTHERN  DISTRICT OF CALIFORNIA**

15

16  UNITED STATES OF AMERICA,               Case No.: 3:18-cr-00577-CRB

17              Plaintiff,                   Judge: Hon. Charles Breyer

18         vs.                              **DEFENDANT MICHAEL RICHARD**
                                            **LYNCH'S REPLY IN SUPPORT OF THE**
19  MICHAEL RICHARD LYNCH and              **MOTION TO COMPEL AND FOR**
                                            **RELATED RELIEF**
20  STEPHEN KEITH CHAMBERLAIN,

21              Defendants.                  Date:  January 10, 2024
                                            Court:  Courtroom 6 – 17th Floor
22                                          Date Filed:  January 8, 2024
23                                          Trial Date:  March 18, 2024

24

25

26

27

28

---

DEFENDANT MICHAEL RICHARD LYNCH'S REPLY IN SUPPORT OF THE MOTION TO COMPEL AND
FOR RELATED RELIEF – 3:18-CR-00577-CRB

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

In its opposition to Dr. Lynch's motion to compel, the government dismissively suggests

3 that his plea for relief is nothing more than "an expression of frustration about what they have

4 long known was coming."  Government Opposition ("Opp.") at 2 (ECF No. 276).  That cavalier

5 response fails to acknowledge how the government's recent conduct has put Dr. Lynch in the

6 untenable position of having to confront:  1) an unexpected deluge of unparticularized

7 allegations relating to more than 100 newly identified complex transactions; 2) an entirely new

8 theory of fraud based on overstated "organic growth"; 3) an unscalable mountain of almost

9 12,000 exhibits; and 4) an improbable list of 70 government witnesses.  All of this in

10 circumstances where the defense still does not have the ability to review millions of documents

11 due to faulty government productions.  This is not a question of "frustration"; it's about

12 fundamental fairness and due process.  While the government's late game tactics threaten to

13 derail this case, swift and serious remedial measures can put it back on track and maintain the

14 current schedule.

15

The idea that the defense should have seen this all coming is inconsistent with the record.

16 As cogently highlighted by Mr. Chamberlain's joinder to this motion, the government has long

17 maintained that this trial would involve essentially the same witnesses, evidence, and arguments,

18 and be tethered to the same transactions and allegations, as those presented in the *Hussain* trial.

19 *See* ECF No. 273 at 3–4.  Indeed, other than the now-severed Count 17, the indictments in the

20 two cases are virtually word-for-word identical.  Similarly, this understanding was reflected in

21 the colloquy when the trial date was set, and further underscored in the government's Voluntary

22 Bill of Particulars ("VBOP") filed on October 8, 2023, identifying 21 transactions that would

23 form the core of the government's case-in-chief that substantially overlapped with the

24 transactions examined in the *Hussain* trial.[1]

25

_____

26 [1] While the government touts how it "voluntarily" provided its so-called VBOP, it is worth
noting that the whole point of the VBOP was to stave off motion practice and avoid being
27 ordered to provide a bill of particulars—something the Court has in the past suggested might be

28

_____

Contrary to its prior representations—based on which the Court deferred ruling on Mr. Chamberlain's meritorious motion for a bill of particulars—the government now reports to the Court that this trial "will not be a repeat of the trial in *United States v. Hussain* but will add new conduct . . . ." Opp. at 2.  That is certainly news to the defense, particularly given the government's earlier position that "[o]ne of the virtues of trying two cases *based largely on the same facts* will be the reasonable expectation that there will be no surprises." ECF No. 90 at 5 (emphasis added).  Ignoring the stark contrast in its positioning, the government blithely suggests that its December filings are all perfectly acceptable and no cause for concern, relief, or delay. Upon inspection, however, each of the government's responses to the concerns raised by the defense—individually and collectively—is simply unsupportable.

**Bill of Particulars:**  The government claims that its new "Supplementary Bill of Particulars" ("SBOP"), filed on December 18, 2023, was "predictable" and the result of its "recently finalized expert report and its ongoing examination of the trial record in the UK civil action." Opp. at 6–7.  This explanation strains credulity.  The government's initial VBOP contained 21 complex transactions valued at approximately $190m; the SBOP contains **124** transactions totaling more than **$615m** in value.  A simple quarter-by-quarter comparison of the deals and values contained in the VBOP and the SBOP underscores the government's dramatic expansion of this case:

| Quarter | VBOP Deals | SBOP Deals | VBOP Value | SBOP Value | Difference |
|---------|------------|------------|------------|------------|------------|
| **Q1 2009** | 1 | 4 | $7.5m | $24.964m | $17.464m |
| **Q2 2009** | 0 | 7 | $0 | $39.428m | $39.428m |
| **Q3 2009** | 1 | 7 | $37m | $51.06m | $14.06m |
| **Q4 2009** | 7 | 16 | $80.6m | $72.235m | ($8.37m) |

necessary in a case such as this one.  *See* ECF No. 99 at 10 (where this Court observed that there was "merit" to Mr. Chamberlain's motion for a bill of particulars identifying the specific transactions challenged by the government, which motion the Court noted was intended to "expedite the case").

| Quarter | VBOP Deals | SBOP Deals | VBOP Value | SBOP Value | Difference |
|---------|-----------|-----------|-----------|-----------|-----------|
| **Q1 2010** | 3 | 10 | $14.7m | $55.785m | $41.085m |
| **Q2 2010** | 0 | 12 | $0m | $73.122m | $73.122m |
| **Q3 2010** | 1 | 15 | $10m | $68.67m | $58.67m |
| **Q4 2010** | 2 | 18 | $10.2m | $77.095m | $66.895m |
| **Q1 2011** | 4 | 17 | $14.26m | $69.227m | $54.967m |
| **Q2 2011** | 2 | 18 | $16.35m | $87.144m | $70.794m |
| **TOTAL** | **21** | **124** | **$190.61m** | **$618.73m** | **$428.12m** |

As the above chart should make clear, nothing about the government's fivefold increase in the number of transactions it seeks to prove at trial, nor the 300% increase in the ascribed value of those transactions—landing the week before Christmas and during the final stage of trial preparation—was "predictable."  Put another way, regardless of the label the government has placed on the document, the SBOP is not a supplementation of the original VBOP, but a complete rewriting of it reflecting a nearly boundless expansion of the contours of the government's case.  The SBOP should be struck for that reason alone, as it would take the defense many months to be prepared to try the government's reimagined case.

        The government tries to argue that the SBOP is fair because it contains deals that its expert relied upon.  *See* Opp. at 6–7.  Putting aside the fact that the government did not serve its SBOP until *after* the defense served its expert reports—completely depriving the defense of the ability to have its own expert consider the accounting for more than 100 newly identified deals and the new organic growth allegation (the inclusion of which in the SBOP the government does not even attempt to defend in its opposition papers)—the government's argument is the inverse of what should have occurred here.  It simply cannot be that the government's expert identified what transactions the government's case should be focused on; experts are guided by the party not the other way around.  Nevertheless, even if the government is being led by its expert, it is implausible that the government was unaware of the transactions that would be included in his report at the time the VBOP was filed (30 days earlier).  The detail and breadth of the

government's expert report and appendices makes clear that it was a work in progress for months, if not years, before the VBOP was filed.

The government's further suggestion that rewriting the VBOP is justified because of "its ongoing examination" of the UK civil trial record in the interim is equally unavailing.  Opp. at 6. That civil trial occurred in 2019 and the judgment was issued in 2021.  That the government decided to wait to trawl the record of that case until *after* it filed the VBOP and identified a legion of new deals that it wanted to include in the prosecution of this case is inconceivable.  It should be obvious, but is nevertheless worth noting given the government's constant refrain about the UK civil case:  The UK civil trial took nine months to try and another two years for the court to issue its decision; it took place in a different country and involved different procedures, rules, laws, pleadings, and claims; it was largely litigated by UK barristers and solicitors; and, it is still ongoing *and* subject to appeal.[2]  In addition, many deals on the SBOP were not part of the UK civil case.  It is simply not accurate or fair to use that **UK civil** action as a proxy for what should be "predictable" about this **US criminal** trial.

Finally, the government fails to even address the fact that the SBOP fails to provide any particulars to guide trial preparation and satisfy its notice obligations.  The SBOP is simply a laundry list of deals and values.  It does not identify the nature of the alleged misconduct with any deal; it does not specify how either defendant was involved in any deals; and it does not identify what documents, witnesses, or allegations relate to each.  While this problem also

---

[2] It should be noted that the damages phase of the UK civil case is underway, and a two-week hearing in that matter is scheduled for late February 2024.  In the opening sentence of the government's opposition to this motion, it cites itself to support the gratuitous claim that this case involves losses of approximately $11.7 billion.  Opp. at 1.  So the record is clear, that is not HP's current position.  In fact, HP's damages claim in the UK civil action is significantly below the government's self-supported assessment, and Dr. Lynch's expert-supported assessment is that any losses are negligible.  This is because many of the allegations are timing related and, overall, the growth and cashflows generated by Autonomy pre-acquisition would have been higher, not lower, than stated if HP's allegations are accepted.  In the UK litigation, HP does not dispute that Autonomy was a highly profitable, cash rich, rapidly growing company with market leading technology.  As such, it cannot, as the government implies, have been worthless.

plagued the 21 deals in the VBOP, the defense expected that the exhibit list and other disclosures would crystalize the allegations, and relied upon the government's repeated representations that there would be no surprises in this case because the evidence would largely track the *Hussain* trial.  As unfair as that puzzle was to solve for the 21 deals in the VBOP—particularly when the government subsequently dropped its exhibit list containing 11,904 documents—putting the puzzle together now for 124 deals and a new theory of fraud, in the remaining weeks before trial, is impossible on the current schedule.  For these reasons, the SBOP should be struck, and the government should be bound to the four corners of the VBOP.  The Court should also order the government to provide further particulars supporting the VBOP.

**Exhibit List**:  The government seeks to justify its **395**-page exhibit list, containing 11,904 putative exhibits, by arguing that it distilled that number from the 16 million documents produced in discovery and that it is, somehow, "manageable" and "in line" with the 3,000-plus documents on the exhibit list in *Hussain*.  Opp. at 6–7.  These skewed justifications fail for several reasons.  First, the government made no reasonable effort to cull actual trial exhibits from the discovery.  Rather, the government appears to have haphazardly cobbled together all the *Hussain* exhibits with thousands of documents relating to Dr. Lynch and Mr. Chamberlain along with thousands of additional exhibits used in testimony and interviews of countless witnesses from the archives of investigations and litigations related to this case.  That its list contained almost 2,000 duplicate documents simply underscores that the list operates as "document camouflage" to conceal an ambush.  Second, the logic that somehow Dr. Lynch and Mr. Chamberlain should *each* separately be prepared to defend against 3,000-plus exhibits falsely presupposes that there is no overlap between the defendants, the allegations, or the evidence in this case **or** with the exhibits from the *Hussain* trial.  Defense counsel reasonably expected that the government's exhibit list would include more than the 1,000 exhibits it placed in evidence during the *Hussain* trial; it did not expect to be presented with an additional 9,000 exhibits and left to guess which ones the government will seek to use in evidence at this trial.  Third, the idea that the government should be commended for searching through 16 million documents to arrive at a (deduplicated) list of 10,000, given the long history of this case and the related cases, does

not hold up.  The trial is around the corner and the government knows what its exhibits will be, and therefore the government should be directed to provide an actual list of the exhibits it intends to rely on so that the defense can prepare for trial.

**Witness List:**  The government suggests there is no need for a new witness list because: a) the witness list in the *Hussain* trial was 69 witnesses; b) the list will inevitably shrink as we get closer to trial; and c) the government is willing to confer with defense counsel about its list. Each of these reasons, however, suggests that the government can easily provide a much more focused list now.  The *Hussain* list was issued before the trial, at which the government ultimately called half those witnesses.  Additionally, the government knows its list will shrink and is willing to provide more details about the likelihood of a witness being called and when each is expected to testify.  In other words, the government knows more than it is letting on about its likely witnesses.  The government concedes as much by noting that its list includes numerous Deloitte auditors, all of whom the defense must prepare for even though the government admits it has no plans to call them all (it called one at the *Hussain* trial).  The Court should order the government to provide a list which reflects the witnesses it actually intends to call, including which witnesses are under subpoena.  Anything less will impact the defense's ability to prepare for trial.

**Discovery:**  The government avers that Dr. Lynch's complaints about missing discovery were delinquent and, in any event, that it has now solved the problem.  The argument that Dr. Lynch delayed in raising the problem is baseless and betrayed by the fact that it took the government six weeks to provide the defense with the missing files after the problem was identified.  Pointedly, the problems encountered by the defense were not easy to identify in the first instance.  To draw an analogy to the world of paper productions, it was as if the government produced 16 million file folders, each containing a document, and labeled with only a Bates number.  The problem was, however, that 3.5 million of those folders were empty, a fact that was not discernable until the defense tried to peek inside those folders, which it was unable to do until all the discovery was uploaded and processed which took several months.  And then, once the missing file problem was identified, it took several weeks to understand the scope and likely

cause of the problem.  The defense promptly notified the government that it was having issues in mid-November and provided the government with a detailed description of what files were missing on November 22.  Now, six weeks later, the defense has finally received what the government claims are "virtually all" of the missing files.  Opp. at 6.  Given the volume, the defense expects it will take several weeks to upload and process the data to be in a position to *begin* to review it.  That date will likely not arrive until after the scheduled depositions and mere weeks before trial is scheduled to begin.

The government brushes this concern aside by stating that it believes that some of these missing files—approximately 25%—were produced to Dr. Lynch in the UK civil action.  While that may be, the fact that Dr. Lynch may have some of these documents from another source in another case litigated in another country, the trial of which ended nearly four years ago, is not the panacea the government suggests.  Moreover, it appears that the remaining 75% of the missing documents (around 2.5 million files) *may* be new to the defense.  The defense doesn't know what it doesn't know and, unfortunately, will not be in a position to know until it can upload, process, and review these new documents, which likely won't happen until after motions *in limine* are filed and several Rule 15 depositions are scheduled to occur.

**Depositions**:  Despite the missing discovery, the unfathomable exhibit list and the particularly unparticularized new bill of particulars, the government nevertheless argues that the parties are in a position to begin taking trial testimony in this case.  To this end, the government posits that the defense "fail[s] to establish that any of the allegedly missing documents are relevant to or necessary to prepare for Mr. Geall's anticipated testimony."  Opp. at 7.  To simply quote that argument is to rebut it—the defense doesn't have the missing documents and doesn't know what is in them.  And, putting aside the absurdity of that point, the government follows it with an equally implausible point:  that the depositions can be reopened at some point in the future to inquire about newly discovered documents.  *See id*.  That, of course, will not happen and, even if it could, it is a woefully inefficient solution to this problem.

Given the myriad problems of the government's own creation, the prejudice to the defense in requiring examination of important witnesses partially blindfolded should be obvious.

Two quick examples underscore this problem.  First, during the relevant period, the government's deponent, Marc Geall, was the head of Autonomy's Investor Relations function and then, an analyst covering Autonomy.  It is thus likely that Mr. Geall will have relevant information about some of the 124 transactions and/or the organic growth allegations the government recently dropped into this case with the SBOP.  In fact, a 302 disclosed to the defense on January 5, 2024, reveals that Mr. Geall discussed Autonomy's organic growth with the prosecutors during an interview in London conducted **two months** ago, on November 10, 2023.  Second, the government's SBOP contains reference to numerous new transactions that appear to relate to an allegation about "hosting" revenue.  Mr. Chamberlain is set to depose Poppy Gustafsson, who handled the accounting for hosting transactions at Autonomy during the relevant period.  As a result, the defense is suddenly and unfairly required to assess these numerous newly identified complex deals in less than a month, handcuffed as it is without access to all the discovery.

The remedy for the government's failures is not to reward it by forcing the defense to blindly press ahead with deposition testimony on the current schedule.  The Court can partially alleviate the problem by:  a) striking the SBOP and restricting the government to the allegations in the VBOP mirroring the *Hussain* trial that the government for years assured the defense and the Court would be the relevant universe at this trial; and b) directing the government to provide real exhibit and witness lists within seven days.  In addition, the Court should adjourn the depositions.  This will allow the defense to properly prepare with adequate notice of the government allegations, the challenged transactions, the real exhibits, and witnesses; it will also allow Dr. Lynch to have a chance to review the missing discovery and, perhaps, to even allow the Court to consider relevant *in limine* motions before the depositions occur.  With substantial effort from the parties and the Court, this meaningful relief could allow the trial to proceed on the current schedule.  Without it, Dr. Lynch will be unable to receive a fair trial and prepare a proper defense.

* * * * *

In sum, the parties are now slightly more than two months from selecting a jury in this complex case—not to mention two short weeks from taking three important depositions—and the defense is still largely in the dark as to what transactions, witnesses, exhibits, and allegations will be presented to the jury and, significantly, still unable to review more than 3 million pages of recently reproduced discovery.  In isolation, each of these matters is concerning enough; in tandem these problems pose a grave threat to Dr. Lynch's right to a fair trial and due process and demand immediate and substantial relief.

## CONCLUSION

For the reasons set forth above, Dr. Lynch's motion to compel and for related relief should be granted.

Dated: January 8, 2024

Respectfully submitted,

By:  _/s/ Christopher J. Morvillo__
Christopher J. Morvillo

Christopher J. Morvillo
Celeste L.M. Koeleveld
Daniel S. Silver
(Admitted Pro Hac Vice)
**CLIFFORD CHANCE US LLP**

Jonathan Matthew Baum (SBN: 303469)
**STEPTOE & JOHNSON LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA  94105
Telephone:  (510) 735-4558
jbaum@steptoe.com

Reid H. Weingarten
Brian M. Heberlig
Michelle L. Levin
Nicholas P. Silverman
Dwight J. Draughton
Drew C. Harris
**STEPTOE & JOHNSON LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 506-3900

*Attorneys for Defendant*
*Michael Richard Lynch*